Good morning, Your Honors. May it please the Court. My name is Mark Hellenkamp, and I represent the appellant, the New Zealand Institute for Plant and Food Research, Ltd., also known in this litigation as Hort Research. This case, as the Court knows, involves an appeal from a motion denying attorney's fees. Tell us what it involves. Kiwi fruit. Yes. My client, Your Honor, was formed by the government of New Zealand. It developed and patented a unique kiwi fruit that has gold-colored flesh and is sweeter than a traditional green kiwi. It entered into a license agreement with a company in North America to see if the product could be developed so that it would grow throughout the year in different seasons in different parts of the world. The licensing entity, called Zespri North America, entered into agreements with farmers in the San Joaquin Valley, and because the Hort 16A gold kiwi fruit had never been grown in this part of the world before, the contracts with the growers specifically stated that we do not represent that this is going to grow here in California. We cannot make that representation because we've never grown it here before. The growers entered into these contracts, and the contracts state in several different ways that they could not sue the licensor if the fruit did not grow as well as they expected. How long does it take for a kiwi plant to produce fruit? That I do not know, Your Honor. Well, I've been to a kiwi farm when I toured New Zealand, and I think they only stay there about this high. Your Honor, I wish I knew more specifics about the farming practices, but I've really just been the appellate attorney in this case, and I did not, that was not part of my record. I apologize. What happened next was, after all the contracts were entered into, and... I just wonder, I'm just a matter of curiosity. There's so much involved here. I just wonder why Zespri didn't get a little plot of land here, and a little plot there, and just try it, see if it worked. I don't know the circumstances, Your Honor, but I suspect that the growers were willing to take that chance because they entered into contracts that said they were the ones taking the chance on it. Yeah, yeah. Did they previously grow kiwis here in California, but a different kind of kiwi? Yes, Your Honor. They were all experienced green kiwi, traditional hayward variety, I believe, kiwi growers. Okay. What is this growing? Hayward? Hayward, I believe, is the term for the traditional green kiwi. Oh, hayward. Oh, I see. Hayward, California. I like that word, yes, I believe. So I found reading this contract kind of complicated. Can you just walk me through why your clients get the benefit of the V-shifting provision, in your view? Yes, Your Honor. Section 1418B of the contracts is the operative provision, actually 1418A and B. 1418A states that Hort Research has material interests in the organic material and the confidential information that are critical to its business. Section B says each of the third-party beneficiaries, in other words, Hort Research. What page are you looking at? It's page 35 of the contract. Oh, and how about in the... Excerpt 145, exhibit 18, page 36. Okay. All right. Let me ask you one thing. Who drafted this contract? Your Honor, I believe there is a provision that states, if I'm not mistaken, that it is to be interpreted as both parties having drafted it. And if I could look for that and then I'll answer that more specifically on my rebuttal time, I'd appreciate it. So I can track that down. If that's true, then your argument would be that we don't apply the normal contractual interpretation rule, that we would construe it adversely to the drafter. That is correct. And the plaintiffs have not made that contention. Okay. You were walking us through A and B. Section B says that Hort Research is entitled to the benefit of the representations, warranties, and covenants of the grower contained herein to the extent of its third-party interests, and may, as third-party beneficiaries or otherwise, enforce this agreement against the grower and sue the grower as if each such entity were a party hereto. Thank you. If you look at Section 8 of the agreement, you see the representations and warranties of the grower that are referenced in the paragraph I just read. Sections 8.1A, C, and G in particular are the as-is provisions, the release provisions, assumption of the risk provisions. They're so clear as to be, you know, they clearly bar a breach of warranty claimed by these growers against the owner and against Hort Research as a result of the third-party beneficiary clause, which specifically says that Hort Research is entitled to the benefit of the representations and warranties of the grower. And that is why the trial court granted summary judgment in favor of Hort Research. So let me see if I can help move it along here. All right. So is your position that, yes, it is true that they are parties as third-party beneficiaries, but it's as to a very narrow set of rights and responsibilities under the contract which were not implicated here, and therefore they have no entitlement to recover attorney's fees? No, Your Honor. The third-party beneficiary clause is actually broad, and it broadly allows Hort Research to take advantage of the releases and waivers that the plaintiffs agreed to. In other words, the plaintiffs agreed they could not sue Zespri, and by virtue of 1418B, they agreed they cannot sue Hort Research as well. However, when it came to the ruling on Hort Research's motion for attorney's fees, which we brought after we prevailed on summary judgment, the trial court denied our motion, even though Hort Research was the prevailing party, even though the contract that contains these releases and waivers that barred the plaintiffs' claims contains an attorney's fee provision, which is at section 1415 of the contracts, and even though this expressed third-party beneficiary paragraph states that Hort Research is entitled to enforce the agreement against the grower as if it were a party hereto. So is it your position that you can enforce the entire agreement without any limitation, or is it your view that your enforcement powers are limited by that phrase to the extent of the third-party interests? I believe they are limited by that phrase, Your Honor, to the extent of its third-party interests, but when you look at what its third-party interests are, it's a relatively broad category. The first paragraph speaks to that, that we have material interests in the organic material and the confidential information, and if you look at the definition of organic material and confidential information, you see that we're talking about the plant material, the graft wood, the seeds, et cetera, plus the know-how in the cultivation and horticultural practices for growing the plant material. So then the complaint or the lawsuit has to implicate your third-party interests for you to take advantage of the fee splitting? That is correct, Your Honor. Okay. That is correct. If we are entitled to the releases and waivers, then we're also entitled to enforce the agreement as if we were a party thereto, and the complaint implicated our interests in the confidential information and organic material, and therefore we are entitled to enforce the agreement as if we were a party and therefore take advantage of the attorney's fees clause. Well, I guess what confuses me is I thought you were arguing that their third-party interests are more limited than that, that this clause basically covers keeping the confidences and secrets of the technology, I guess I'll call it, of how you grow this stuff. That's the plaintiff's argument, Your Honor. And not giving away, what would they be, fruit grafts or, you know, samples, whatever, to others who might be taking advantage of the technology without paying the defendants some kind of a licensing fee. Isn't that what this clause is all about? It is not, Your Honor. That is the plaintiff's position in their brief, and it's a novel one because the definitions of organic material and confidential information as set forth in the contract are not even remotely limited to the idea that our only interest is protecting the confidentiality of our intellectual property or trade secrets. That's their position, but that's clearly not what the contract says. Well, I mean, it does talk about representations about organic material, which I assume is broad enough to include alleged promises that this particular variety of kiwi fruit will grow well in the Central Valley. Exactly. And that's exactly why we have these provisions in the contract to prevent a lawsuit alleging that we somehow represented that it was going to grow here. We wanted the growers to sign off on the fact that we did not have experience growing it here. And therefore, if you do try to sue us, whether you sue us in contract or warranty or whatever, we are entitled to enforce these provisions that say, no, you can't sue us. And if that's the case, which it was here because the trial court granted summary judgment, then we're also entitled to enforce the agreement as if we're a party, which means invoking the attorney's fees clause. And it's 8.1 that is the provision of the contract that basically covers you can't sue us on a theory that we made a promise to you that this fruit will grow just fine in the Central Valley. Yes, Your Honor. So if we agree with you that that's the the intent that your interpretation of the contract is the intent of both parties to the contract. Do we need to reach the civil code section 1717 issue? No, you don't, Your Honor. That that's a non-issue. The fact is we brought this motion on two alternate theories. The motion for attorney's fees on one on civil code of civil procedure section 1021, which does not require any sort of reciprocity analysis. And that's really a kind of a red herring going through the plaintiff's brief about the reciprocity requirement because they never argued in the trial court. The district court didn't address it. And we didn't think it even applies. And they're not even arguing now that we failed to meet that requirement. So it's it's basically a non-issue. This case is on all fours with the case called Rudy versus Clear Channel, which was a district court decision affirmed by a panel of this court. It involved this very, very similar facts. The employee of the party to the contract was determined to be entitled to enforce the releases made by the plaintiffs in a contract with Roaches, the employee Roaches employer CBS. And the court held that as a result of the fact that Roach could rely on the releases of the plaintiff, it was therefore also entitled to rely on the attorney's fees clause. In fact, the language in this case in our contract is even stronger than the language in Rudy. It specifically says, as I mentioned, it may her research may enforce this agreement against the grower as if it were a party here, too. It's also stronger than the language in the real property services case, the Cargill case, the Leduca case. All those cases in all those cases, the court stated that if the third party beneficiary had prevailed, it would have been entitled to attorney's fees. The trial court's rationale, just very briefly, your honors, basically ignores the second phrase of section 1418B. While the court found that we were entitled to the benefit of the releases and waivers, it ignored the second phrase of 1418B in denying our motion for attorney's fees. If court research cannot enforce the attorney's fees clause, what does the second paragraph or the second phrase of 1418B refer to? If the fee clause is not a covenant within the meaning of the third party beneficiary clause, what does the word covenant refer to? The trial court's ruling did not answer these questions and the plaintiffs have offered no answer either. The second phrase of 1418B is basically meaningless and superfluous if it's interpreted to mean exactly the same thing as the first phrase. But it is not the same. It specifically says that Hort Research can enforce the agreement against the grower. And that's, therefore, why it is, why Hort Research is entitled to rely on the attorney's fees clause. That language undermines any suggestion that the clause itself must somehow refer to Hort Research, the attorney's fees clause. Another clause of the contract takes care of that. It says Hort can enforce the contract as if it's a party. You might wind up because you're over your time. Very briefly, Your Honors, the two cases primarily relied upon by the plaintiffs, the Sessions payroll and the Blickman-Turkus case, neither of them are on point. Neither of those cases recognized any third party beneficiary rights. They clearly did not involve language here that allows expressly Hort Research to enforce the party, the agreement as if it's a party. In fact, there's no case holding that a third party beneficiary is entitled to enforce the contract, but it's not entitled to enforce an attorney's fees clause. This would be contrary to the Real Property Services case, the Cargill case, and the Leduca case, and, of course, the Rudy case, which is almost entirely on all fours. Thank you, Your Honors. Thank you. Good morning, Your Honors. My name is Stephen B. Stevens. I represent the appellee in this matter. The issue here, of course, is what was the intent of the parties to the contract. That's what it comes down to. And the defendant offers no parole evidence about the negotiations involving this contract. So what we are left with is to look at the 35 pages of sometimes convoluted prose. Did you take the position that the contract was ambiguous? No, Your Honor. We think it's quite clear that they're not entitled to the attorney's fees. So we look at the four corners of the contract. And to the extent we know the circumstances under which it was negotiated, we can consider that, too. For example, Your Honor, let's be candid here. Let's always be candid. Yes, let's always be candid. The appellant here is a government entity from New Zealand. The owner of these kiwi plants was also a New Zealand entity that got together with the research arm of the government in New Zealand and started to market this material. Nothing nefarious about that at all. But clearly they're working in tandem. And the fact that there's no declaration or affidavit from anyone from Zespri saying, you know, when we were negotiating with the growers, we intended to include the third-party beneficiary to the full panoply of rights, including the attorney's fees clause. Why is that necessary if this is just a matter of contract interpretation? Well, I think it's telling because if we're looking at the intent of the parties and we're looking at the four corners of the instrument, Your Honor, then we look at what language they actually chose, not this broad language of the third party is entitled to the full panoply of rights as if it was a party. But that's in the contract. No, actually it isn't, Your Honor, because if you look at the way the contract's structured, first there's the recitals, which define grower and owner, and define them as parties. And they actually use a very formalistic term. They capitalize the word party. Grower and owner sometimes refer to singly as party or collectively as parties. And throughout the 35 pages, including Section 1418, which the defendant relies upon, and including 1415, the attorney's fees clause, you see the word parties capitalized, the synonym for grower and owner. Now, if we take a look at 1418, it talks about the rights of the third party beneficiary, which is specifically defined as Hort Research, they get limited rights, and they can enforce the agreement to the extent of their interests. Well, what are their interests? Well, their interests are in protecting what counsel just called the technology, the know-how, the patent, the cellular structure, the organic material, the confidential information, and the intellectual property. As a matter of fact, Your Honor, the interesting thing about that clause, 1418, sub B, I'm looking at the record, volume 2, page 145, is that the way the third party's rights are structured, it doesn't say third party is to be considered like the grower, third party is to be considered just like a party. It says to the extent of its third party interests, it may enforce this agreement against the grower, that is my clients, and sue the grower as if each such entity were a party or two. But wasn't the crux of your whole complaint was you promised us that this variety of kiwi fruit would grow very well in the Central Valley, and that's not true. We've tried it, and it's not working. And so we're suing you for breach of that promise, a warranty or representation. It was a breach of warranty. That's the whole crux of your lawsuit. That was the crux of the lawsuit. So how do I get around 8.1? I mean, isn't that the provision of the contract in which you release expressly any claim for breaches of warranties or representation? That was sort of prefatory foundation to the real question I wanted to ask you, which is if that is all, if that's all that's involved, why doesn't that fall within the provision of 14.18, even on your theory that the third party interests here are much more limited than the interests of the growers as a party and the signatory to the contract, which I guess is less brief as a party. My promise to you not to sue you for anything you tell me is much different than my promise to you not to steal your know-how and technology. And that's what the contract here was protecting. And I understand that protection. But the theory of your claim was more than just protection of the trade secret. It was you told us that this fruit would do well in the Central Valley. And that just isn't so. And we've been damaged to the tune of, what, $15 million, I think, was in your... I apologize. It was several millions of dollars. So we've been damaged because we planted all of this wonderful New Zealand fruit grafts and they just won't grow. And therefore you lied to us and we want damages from that. Right. But there was no claim at all that we actually owned the know-how, the confidential information. We made no claim that the technology, the science of this kiwi fruit really belongs to us. If we had made that claim, they'd have a much better argument. Isn't that a representation with regard to the organic material that these grafts will, in fact, grow in the soils of California? That is a representation about what the material will do. That's far different than a lawsuit or a claim that I actually own these grafts, that I own the technology. So you want us to read that clause as being more narrowly limited to a claim that one of the farmers, let's say, gave fruit grafts to another farmer who wasn't a signatory to this contract and thereby gave away the defendants' property. I think that would be within the scope of the language to the extent of their interests. Because their interests are defined, as the court's questions indicated, to the science involved here. In fact, counsel's opening sentence, I believe, was they patented this fruit graft. I understand that. They want to protect their patent. And any patent litigation or confidential information litigation or trade secret breach, they want to make sure they're fully covered. If they wanted the full panoply of protections of being a party to the agreement, they could have become just a party to the agreement. They could have worked with their consort, Zespri, to say, give us the full panoply of agreements. The entire agreement here is structured as between grower and owner with a carve-out for limited exceptions for the government of New Zealand. So can I ask you, if you had prevailed instead of the other way around, would you have a claim for attorney's fees against Hart Research? I don't believe so, Your Honor. And I say that with full knowledge that sometimes law can be a hypocritical profession. The fact is, if we had won on our breach of contract case on merchantability theory, I don't think we'd have a claim for it. Because we're not contesting the ownership of the technology, the know-how, the patents, the trade secrets. We're just saying your graft didn't perform as well as you told us it would. That's not the same thing as the extent of the third-party interests in the, as they put it, the fruit wood, the graft wood, the seeds, the patents, the technology, the process, the know-how. As a matter of fact, if you look at the contract, Your Honor, it even says, and future developments in the horticulture, I think, there's some phrasing to that. So, so, Hart Research was looking not to protect itself from its representations or a lawsuit about representations. It wanted to protect itself from someone, they were giving a valuable piece of technology away, a valuable piece of horticulture away, and they didn't want it to go any further than this deal between Zespri and the growers. Mr. Stevens, is Mr. Uramovic's complaint the operative complaint here that was filed in March of 2007? I believe, if that's the one in the excerpt, I believe it is, Your Honor. Record 43. Yes. I'm looking at the claim for relief, and I don't see a claim for attorney. I don't think there was one. There's a claim for cost of suit, but I think that would be it. And that reminds me, Your Honor, thank you. I hope I have some time left. The reference to CCP 1021, that is not an independent basis for attorney's fees. That says that you have to have an agreement, either by statute, agreement or a statute that provides for attorney's fees. You don't, you can't, a litigant can't point to CCP section 1021 and say, I get attorney's fees. It doesn't work that way. Well, I guess the only reason I pointed that out is that I assumed that had the plaintiff taken the position that it was entitled to recover attorney's fees from the defendants, they would have included that in their prayer for relief. I would have thought so, Your Honor. Absolutely. Oh, and by the way, the Court asked a question to counsel, and I thought I'd provide the answer. There was a reference to who drafted the agreement. Someone, the Court asked who drafted the agreement, and there was a reference to a clause that says it should be interpreted as if it was negotiated. It doesn't quite say that, but I think what counsel was looking for was section 14.11, which is volume two of the ER at 144, and it says the terms of this agreement have been negotiated by the parties here, too. And by the way, parties is also formalistic, capital P, going back to the definition of grower and owner. And the language used in this agreement shall be deemed to be the language chose by the parties, again, the formalism, here, too, to express their mutual intent. So we look at the four corners of the agreement. We also know something about how this agreement came about, because it's part of the record. So it seems to me that rather than taking the broad brush where Hort Research says we are entitled to everything that the owner was entitled to, in fact, they're entitled to much less. And that's the reason why all the cases they rely upon are distinguishable, because in those situations, there was actually the third party was actually defined as having certain rights. The Rudy case that ---- Where does it say they're entitled to much less? Well, that's from the section 14.18, which talks about to the extent of the third party interests. If the third party was to get the full panoply of the owner's rights, the contract would simply say owner shall include the third party beneficiaries. There is a provision in the agreement that puts the horticulture really in the shoes of the party to an agreement. I don't read it that way, Your Honor. I think you might be referring to something ---- It's not the easiest thing in the world to read. No. Yeah. This reminds me of those sayings in law school where the court talks about the contract is not a model of clarity. This is something less than a model, more like a mobile strip of clarity. But you signed it. Your client signed it. Yes, they did. Yes, they did. Did you negotiate it? Oh, no. I doubt there was much negotiation about this at all. I mean ---- And did you have anything to do with drafting it? Personally, no. I'm the appellate counsel. Okay. Like those guys behind me who disclaimed all knowledge. That wasn't particularly effective. Your Honor, I can only deal with the record. I was afraid ---- I'm a member of the Society of Professional Journalists. I was afraid I was going to bury the lead when I saw the first oral argument. I think the Court's referring to Section 1418 sub c. It says that except as set forth in Sections A and B, which refers to the third party's limited rights, the extent of third party rights, this agreement is for the benefit of the parties, again, capital P, equals grower and owner, and their respective permitted successors and assigns only. And no other person shall be a third party beneficiary hereof or otherwise entitled to enforce the provisions thereof. That's at 2ER146, Your Honor. I seem just about out of time, and I do want to address any questions that the Court may have. I just have one. Why doesn't the fee shifting agreement fall under confidential information C, the terms, conditions, and other provisions of the head licenses? If the lawsuit involved the extent of the third party interest, which involve, as I say, the know-how, technology, science, et cetera, then I'd say that would be correct. But why isn't the third party interest inclusive of the confidential information? If the lawsuit was about a breach of that confidential information, I think it would. It's about some of the terms and conditions and other provisions of the head licenses, isn't it? I apologize, Your Honor. I lost the gist of the question. Okay. So I'm just saying under confidential information, which is part of the third party interest, it lists the terms, conditions, and other provisions of the head licenses. Yes. Isn't the fee shifting agreement one of those? Only if the action involves impairment of that confidential information. Because remember, if you take a look at 1418 sub B, what is contemplated is that the third party interest might want to enforce the agreement against the grower or sue the grower. And so clearly what the parties were contemplating is not that the growers would be attacking the third party beneficiary on a routine damages claim, but that the third party beneficiary would be filing lawsuits against the growers, my clients, for some sort of, as the Court suggested, giving away the technology, giving away the know-how, giving grafts to other farmers or selling them or that sort of thing. I see I'm now over a minute, but I'm happy to answer all questions. I think you've covered all mine. Thank you. Well, thank you very much, Your Honor. Good. Fine. Thanks. One minute. Sure. Thank you. If the Court looks at the definitions of organic material and confidential information, it will see quite clearly that court researchers' interests were not limited to protecting the confidentiality of its trade property, as Mr. Stevens is suggesting. Organic material covers all of the plant material, the seed, et cetera, the graft wood, and confidential information includes the knowledge of cultivating, harvesting, and storing, packaging, transporting, et cetera, plant material. Those interests in 1418 are referred to as, court research has, material interests in the organic material and the confidential information that are critical to its business. Those interests were under attack by the plaintiff's lawsuit. If the Court looks at those definitions, I don't think it will see this as a close question in terms of the issue of whether our rights were limited to protecting confidentiality of trade secrets and intellectual property. Thank you, Your Honors.
judges: Pregerson, Wardlaw, Tallman